# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------- x
                                                   :
Isaac Iglesias, individually and on behalf of      :
all others similarly situated,                     :      CASE NO. 1:22-cv-08398
                                                   :
              Plaintiff,                           :
                                                   :
         v.                                        :      CLASS ACTION COMPLAINT
                                                   :
HRA Pharma America, Inc.,                           :      JURY TRIAL DEMANDED
                                                   :
              Defendant.                           :
                                                   :
------------------------------------------------- x
```

Plaintiff Isaac Iglesias ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his attorneys, brings this Class Action Complaint against HRA Pharma America, Inc. ("Defendant" or "Mederma") based upon personal knowledge as to himself, and upon information, investigation and belief of his counsel.

## SUMMARY OF THE ACTION

1.     This class action seeks to challenge Defendant's false and deceptive practices in the marketing and sale of its Mederma Scar Cream + SPF 30 product (the "Product").

2.     Specifically, the Product's front label representations lead reasonable consumers to believe that the Product is Mederma's regular scar cream ***plus*** ("+") sunscreen; in other words, that the Product contains the active ingredient of Mederma's regular scar cream and the active ingredients of a sunscreen. These representations include the phrase "Mederma Scar Cream," an addition symbol ("+"), and the term "SPF 30." *See* ¶ 17.

3.      The front label of the Product also states, "REDUCES THE APPEARANCE OF OLD & NEW SCARS." *Id*. This further indicates to consumers that the Product has the active ingredient used in its regular product (as it carries the identical language as Mederma's regular scar cream product.) *See* ¶ 19.

4.      Furthermore, the designs, colors, font, and layout of the Product's front label are nearly identical to those used on the front label of Mederma's regular scar cream product. *Id*.

5.      Unbeknownst to consumers, however, the Product is not Mederma regular scar cream plus sunscreen. This is because the Product does not contain the active ingredient in Mederma's regular scar cream—allantoin.

6.      Instead, the Product only contains the active ingredients avobenzone, octocrylene, and oxybenzone—the active ingredients of any other sunscreen. This means that consumers are paying a price premium for a sunscreen lacking any active ingredient that treats scars, and that comes in a .7 oz tube, which is a paltry amount compared to other sunscreen products.

7.      Because the Product does not contain allantoin, the active ingredient in Mederma's regular scar cream, the Product is falsely and deceptively advertised.

8.      Plaintiff and other consumers purchased the Product and paid a premium price based upon their reliance on Defendant's representations. Had Plaintiff and Class members been aware that the Product does not contain the active ingredient allantoin, Plaintiff and Class members would not have purchased the Product or would have paid significantly less for it. Accordingly, Plaintiff and Class members have been injured by Defendant's deceptive business practices.

## PARTIES

### I.     Plaintiff

9.      Plaintiff Isaac Iglesias is a citizen of New York and currently resides in New York, New York. In or around early October 2019, Plaintiff purchased the Product online, from the e-commerce website known as "eBay." In purchasing the Product, Plaintiff saw the representations "Mederma Scar Cream," an addition symbol ("+"), and the term "SPF 30," on the front label of the Product. Plaintiff also saw the phrase "REDUCES THE APPEARANCE OF OLD & NEW SCARS," and took notice of the designs, colors, font, and layout of the Product's front label, which are nearly identical to those used on the front label of Mederma's regular scar cream product.

10.     Based on these representations, he reasonably believed the Product contained the active ingredient in Mederma's regular scar cream. Had he known that the Product did not contain regular scar cream's active ingredient, but simply the active ingredients of any other sunscreen, he would not have purchased the Product or would have paid substantially less for it.

### II.    Defendant

11.     Defendant HRA Pharma America, Inc. is an international consumer healthcare company, is a Delaware Corporation which maintains a headquarters in Morristown, New Jersey. Defendant is responsible for the formulation, ingredients, manufacturing, naming, marketing, and sale of the Product in the United States, including in this District.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members;

3

(2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home states; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

13.    This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Product into the stream of commerce within New York.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

## FACTUAL BACKGROUND

15.    Defendant is consumer healthcare company, which builds and develops strong over the counter and consumer healthcare brands, including the Mederma® scar care products at issue in this case.[1]

16.    This action challenges the front-label representations of Defendant's "Mederma Scar Cream + SPF 30" Product. Specifically, the Product's front label representations lead reasonable consumers to believe that the Product is essentially Mederma's regular scar cream *plus* ("+") sunscreen; in other words, that the Product contains the active ingredient of Mederma's regular scar cream (allantoin) *and* the active ingredients of a sunscreen.

17.    These representations include the phrase "Mederma Scar Cream," an addition symbol ("+"), and the term "SPF 30." *See image below*.

---

[1] https://www.hra-pharma.com/files/press/Press-Release_HRA-Acquires-Mederma-Final.pdf



18.     The front label of the Product also states, "REDUCES THE APPEARANCE OF

OLD & NEW SCARS," which further indicates to consumers that the Product has the active

ingredient of Mederma's regular scar cream.

19.     Furthermore, the designs, colors, font, and layout of the Product's front label are

nearly identical to those used on the front label of Mederma's regular scar cream product. *See

image below*.



20.     Since Plaintiff's purchase of the Product, Mederma has changed the packaging, but it remains misleading and deceptive to consumers as Mederma continues to advertise it as "Mederma Scar Cream," an addition symbol ("+"), and the term "SPF 30."  *See images below*.




21.     The front label of the new packaging for the Product also states, "Clinically shown to visibly reduce the appearance of scars while protecting from sun damage," which further indicates to consumers that the Product has the regular scar cream's active ingredient

(which has been "Clinically shown to visibly reduce the appearance of scars") and the active ingredients of a sunscreen (which are clearly for "protecting [scars] from sun damage").

22.     Unbeknownst to consumers, however, the Product is not Mederma scar cream plus sunscreen. This is because the Product does not contain the active ingredient in Mederma's regular scar cream—allantoin.

23.     Instead, the Product only contains avobenzone, octocrylene, and oxybenzone—the active ingredients of any other sunscreen. This means that consumers are paying a price premium for a sunscreen lacking any active ingredient that treats scars, and that comes in a .7 oz tube, which is a paltry amount compared to other sunscreen products.

24.     As such, Defendant has engaged in false and deceptive advertising.

25.     The reasonable belief that the Product contains the regular scar treatment product's active ingredient was a significant factor as to why Plaintiff and other class members decided to purchase the Product. Indeed, the fact that the Product lacks this active ingredient (*e.g.*, allantoin) is material to consumers because "there is extensive research on it that proves its healing effects on skin."[2] "It's used in standard skin care, but it's also not uncommon to find allantoin in medical-grade products and prescriptions because of its healing and repairing benefits."[3] Thus, reasonable consumers are led to believe they are purchasing a premium Product that contains an active ingredient such as allantoin; however, that is not the case, as consumers are just receiving the active ingredients of a typical sunscreen product, which is clearly less premium than what they were promised.

---

[2] https://theklog.co/allantoin-for-acne-scars/
[3] *Id.*

26.     As the entity responsible for the development, labeling, manufacturing, advertising, distribution and sale of the Product, Defendant knew or should have known that the Product's front-label representations mislead reasonable consumers into believing the Product contains the same active ingredient found in Defendant's regular product, even though it only contains ordinary sunscreen ingredients.

27.     Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Product, would rely on Defendant's front-label representations, marketing, and advertising. Nonetheless, Defendant deceptively advertises the Product in order to deceive consumers and gain an unfair advantage in the market.

28.     Consumers are willing to pay more for the Product based on the belief that it contains an active ingredient used to treat scars.

29.     Plaintiff and other consumers would have paid significantly less for the Product, or would not have purchased it at all, had they known that the truth about the Product. Thus, through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed.

30.     Therefore, Plaintiff and other consumers purchasing the Product have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

31.     Plaintiff and members of the Class were exposed to and justifiably relied upon the same material misrepresentations throughout the class period, and were injured in the same manner: (1) the representations discussed herein on the front label of every Product sold leads reasonable consumers to believe the Product contains the active ingredient for treating scars; and (2) no Product sold contains such active ingredients.

## CLASS DEFINITION AND ALLEGATIONS

32.     Plaintiff brings this matter on behalf of himself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following class (herein, the "New York Class" or "Class"):

> All residents of New York who purchased the Product for personal, family, or household consumption and not for resale within the applicable statute of limitation period ("New York Class").

33.     Plaintiff reserves the right to amend the Class definition if discovery or further investigation reveals that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

34.     The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

35.     This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

36.     **Numerosity:** Members of the Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of

the Class is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there are likely thousands of Class members.

37.   **Commonality:** There are questions of law and fact common to the proposed Class. Common questions of law and fact include, without limitations:

a.   whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b.   whether reasonable consumers would rely upon Defendant's representations about the Product and reasonably believe that it contains allantoin;

c.   whether Defendant knew or should have known its representations were false or misleading;

d.   whether Defendant was unjustly enriched by retaining monies from the sale of the Product;

e.   whether certification of each Class is appropriate under Rule 23;

f.   whether Plaintiff and the members of each Class are entitled to declaratory, equitable and/or other relief, and the scope of such relief; and

g.   the amount and nature of the relief to be awarded to the Plaintiff and the Classes, including whether Plaintiff and the Classes are entitled to punitive damages.

38.   **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Product. Plaintiff and the members of the Classes relied on the representations made by the Defendant about the Product prior to purchasing the Product. Plaintiff and the members of each Class paid for Defendant's Product and would not have purchased it (or would have paid substantially less for it) had they known that the Defendant's representations were untrue.

39.     **Adequacy:** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class he seeks to represent; his claims are common to all members of the Class and he has a strong interest in vindicating his and all other Class members' rights. Plaintiff has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action through judgment and appeal, if necessary.

40.     **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

41.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
*(On Behalf of Plaintiff and New York Class)*

42.     Plaintiff repeats and realleges Paragraphs 1-41 as if fully set forth herein.

43.   New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

44.   The conduct of Defendant alleged herein constitutes "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class Members seek damages against Defendant.

45.   Defendant misleadingly, inaccurately, and deceptively advertises and markets its Product to consumers.

46.   Defendant's improper consumer-oriented conduct—which includes representing to Plaintiff and consumers that the Product contains an active ingredient to treat scars, even though it only contains the active ingredients of ordinary sunscreen—is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class Members to purchase and pay a premium for Defendant's Product when they otherwise would not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

47.   Plaintiff and the New York Class Members have been injured inasmuch as they paid a premium for a Product that does not—contrary to Defendant's representations—contain any active ingredient for treating scars. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

48.   Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class Members have been damaged thereby.

49.     As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and the New York Class Members are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**SECOND CLAIM FOR RELIEF**</u>
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350**
*(On Behalf of Plaintiff and the New York Class)*

50.     Plaintiff repeats and realleges Paragraphs 1-41 as if fully set forth herein.

51.     New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

52.     GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

53.     Defendant's labeling, advertising, and marketing of the Product are materially misleading representations inasmuch as they misrepresent that the Product contains an active ingredient to treat scars, even though it only contains the active ingredients of ordinary sunscreen.

54.     Plaintiff and the New York Class Members have been injured inasmuch as they relied upon the Product's front-label representations (discussed herein) and paid a premium for the Product which —contrary to Defendant's representations— does not contain any active ingredient for treating scars. Accordingly, Plaintiff and the New York Class Members received less than what they bargained and/or paid for.

55.     Defendant's labeling and advertising of the Product induced Plaintiff and the New York Class Members to buy Defendant's Product. Thus, Defendant made material misrepresentations about the Product.

56.     Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

57.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Product were and continue to be exposed to Defendant's material misrepresentations.

58.     As a result of Defendant's unlawful deceptive acts and practices, Plaintiff and New York Class Members are entitled to monetary, compensatory, statutory, treble and punitive damages, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
### IN THE ALTERNATIVE, UNJUST ENRICHMENT
*(On behalf of Plaintiff and the New York Class)*

59.     Plaintiff repeats and realleges Paragraphs 1-41 as if fully set forth herein.

60.     To the extent the Court finds that Plaintiff and the members of the New York Class did not form a contract with Defendant at the time they purchased the Product, Plaintiff

brings this claim for unjust enrichment in the alternative, individually and on behalf of the New York Class.

61.     Plaintiff and New York Class Members purchased Defendant's Product and paid a premium for the Product. Defendant misrepresented that the Product contained an active ingredient to treat scars, which commanded a price premium.

62.     Defendant had knowledge of such benefit and obtained the benefit by its misrepresentations because the misrepresentations induced reasonable consumers to purchase the Product, which they would not otherwise have purchased or purchased at the advertised price.

63.     Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and New York Class Members. Defendant currently retains these benefits.

64.     Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefits were obtained by Defendant's misconduct detailed at length in this Complaint.

65.     Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and New York Class Members, and therefore restitution and/or disgorgement of such economic enrichment is required.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed Class, respectfully requests that the Court enter judgment in his favor and against Defendant as follows:

a.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.   A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.   An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the Class to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

d.   An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

e.   Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

f.   an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

g.   an award of pre- and post-judgment interest to Plaintiff and members each of the Class if applicable; and, ordering further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff and members of the Classes demand a jury trial on all issues so triable.


DATED: October 1, 2022            **CUSTODIO & DUBEY, LLP**

By: ___/s/ Robert Abiri_____


Robert Abiri (SBN 238681)
E-mail: *abiri@cd-lawyers.com*
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899

*Attorney for Plaintiff and the*
*Putative Classes*